Maggie Venturini, on or about December 6th, 1934, died, leaving a last will and testament, which was probated before the surrogate of Bergen county. She appointed as her executrices, her nieces, Katherine Gallagher and Theresa Miller, who are children of her sister, Teresa Peratti. In June, 1936, they filed their account with the surrogate of Bergen county against which eight exceptions were recorded by Joseph Venturini, the husband of the decedent. Seven of the exceptions were sustained by the orphans court; the remaining one, was abandoned. An appeal was taken hereto from the orphans court decision on the second, third and fourth exceptions. The second exception reads as follows:
"Accountants pray allowance for the sum of $2,000 expended by them in the purchase of monument in cemetery — Holy Cross, whereas said sum is greatly in excess of what said monument is reasonably worth."
The third exception reads as follows:
"Accountants pray allowance for the sum of $662.48 expended by them for moving stone in cemetery, markers, *Page 385 
re-lettering, re-cutting markers, whereas said sum is greatly in excess of the fair value of said services and markers and greatly in excess of what said services and markers are reasonably worth."
The fourth exception reads as follows:
"Accountants pray allowance for the sum of $16.43 for hauling and setting foundation in Holy Cross Cemetery, whereas said sum is greatly in excess of the fair value of said services are reasonably worth."
The ninth paragraph of the will reads as follows:
"I direct my executrices to place a monument at my grave, with my name and proper inscriptions thereon at a cost therefore in the judgment of my executrices for which they may expend as much as $5,000."
The executrices purchased an alleged "second-hand" monument from the estate of their mother, the said Teresa Peratti, for the sum of $2,000. It originally had been erected upon the Peratti plot in St. Joseph's Cemetery, Lyndhurst, New Jersey. It was moved therefrom to the Holy Cross Cemetery in North Arlington, New Jersey, and placed upon the grave of the decedent testatrix. At the time of its purchase by the executrices, the monument was inscribed with the Peratti name. After it had been moved to Holy Cross Cemetery, the name of Peratti was effaced from the monument and the names of "Peratti and Barberri" were substituted thereon. The name "Barberri" had been the maiden name of the decedent, Maggie Venturini.
A foundation for the monument was laid on the Venturini plot in Holy Cross Cemetery, and a new marker bought for the headstone of the testatrix' grave. The appellants claim that the cost incident to the removal of the monument and rearranging it, amounted to $678.91. For the cost of the monument the executrices drew a check for $2,000 to the order of the said Katherine Gallagher. The $2,000 was distributed among the children of Teresa Peratti. The executrix Katherine Gallagher, as a daughter, and one of the next of kin of Teresa Peratti, received her proportionate share of the $2,000. *Page 386 
It was testified that the monument was purchased by the estate of Teresa Peratti, in the year 1923, when it was new, for approximately $2,000. It is composed of granite stone and has a marble statue. It had one headstone or marker.
The argument of the appellants is to the effect that the sum of $2,000 paid by the Venturini executrices, is the reasonable value of the monument, statue and marker. They produced a witness, Albert H. Hopper, who is engaged in the monument business. He placed a value of $2,100 on the monument, with one marker, or headstone. The respondent produced Peter J. Malnati, a monument dealer, who testified that the reasonable value of a new monument, similar to the one under consideration, with three markers, is $1,980. The reasonable value of the same kind of a monument, with one marker would be $1,730. The cost of a marker is $124. Harry Cox, who is engaged in the monument business, on behalf of the respondent stated that the fair value of the monument installed on the Venturini plot was $600 or $700; and that the reasonable cost of a new one would be $1,760. A granite broker, Gunnar M. Johnson, testifying in behalf of the respondent, stated that the reasonable cost of a new monument, similar to the one in question, is $1,788. He further testified that "a second-hand memorial" has no retail value. Joseph Rupolo, testifying for the respondent, said that the reasonable cost of a new monument similar to the one under consideration would be $1,700.
The respondent contends that the sum of $672.48 expended by the executrices for moving the monument to the Holy Cross Cemetery, and for its re-lettering, re-cutting, c., is extravagant and far in excess of the fair and reasonable value; and that the sum of $16.43 for hauling and setting the foundation for the monument is beyond the fair and reasonable value of the services incident thereto; and that such excesses, in effect, constitute waste. He charges that the act of the executrice Katherine Gallagher in sharing in the proceeds of the purchase price of the monument, is one upon which equity frowns and refuses to approve.
In McKnight's Executors v. Walsh, 24 N.J. Eq. 498, it is *Page 387 
said: "That the trustee shall derive to himself no gain, benefit or advantage by the use of the trust funds." Again, we know, "an executor is a trustee, and not allowed to purchase or speculate in the property of testator for his own benefit." Arrowsmith v.Van Harlingen's Executors, 1 N.J. Law 29. The more recent case of McAllister v. McAllister, 120 N.J. Eq. 407; affirmed,121 N.J. Eq. 265, says:
"The duty of a trustee is to administer the trust committed to his care in the interest of the beneficiary and he is not permitted to place himself in a position where it would be for his own benefit to violate his duty to the beneficiary."
The fact that an executrix or trustee may have been actuated by the highest motives in dealing with the funds of an estate has been considered and discussed, and disposed of by this court in its opinion in the case of Gates v. Plainfield Trust Co.,121 N.J. Eq. 460. It was there said "the law makes no distinction as to the sincerity behind the act of investing when the investment is without the bounds of legal approval." The same principle was enunciated in In re Bender, 122 N.J. Eq. 192.
The ninth paragraph of the will of the decedent, directed that her name and proper inscription be placed on "a" monument. The decedent's maiden name Barberri was inscribed on the monument. That was not her name at the time of her death — her name was Venturini. She directed that the monument be inscribed "with my name." She signed her will "Maggie Venturini."
While the executrices were authorized to expend the sum of $5,000 for a monument, they were not expressly, or impliedly authorized to expend a sum that was not commensurate with the value of the article purchased. They were not licensed to extravagantly disburse, or indiscriminately waste the funds of the estate. The great weight of the evidence shows that the amount paid for the monument is far in excess of its reasonable value. Under the circumstances, I feel that the decree of the orphans court should be sustained. The figures arrived at by that court, are, in my opinion, right and proper. *Page 388